UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN KING MEYER,

    Plaintiff,

v.

JOSEPH NATOLE, *et al.*,

    Defendants.
_____/

Case No. 1:14-cv-536

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

    This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. *Pro se* plaintiff filed a 65-count complaint directed at six defendants. Although plaintiff is in the custody of the MDOC, his claims arise from incidents which occured while being held in the Allegan County Jail. This matter is now before the Court on a motion for summary judgment filed by defendant Jeanne Nelson ("Ms. Nelson") (docket no. 64).

    **I.**     **Plaintiff's complaint**

    On January 10, 2012, plaintiff was arrested and placed in the Allegan County Jail, charged with the felony of first degree criminal sexual conduct. Compl. at ¶ 15 (docket no. 1, PageID.9); Booking Card (docket no. 1-1, PageID.61). He suffered a cardiac arrest at the jail on July 6, 2012. Compl. at ¶¶ 105-106, PageID.15. Plaintiff alleged that some of the defendants were deliberately indifferent to his serious medical needs because they caused his cardiac arrest by prescribing Trazodone and caused him additional injury after that date by prescribing Celexa. *See* Compl. at ¶ 39, PageID.10 (defendant Dr. Flentje provided Trazodone to help plaintiff sleep); *id.* at

¶ 50, PageID.11 (Dr. Flentje increased the Trazodone dosage on April 17, 2012); *id.* at ¶ 53, PageID.11 (defendant Dr. Natole authorized an increase in Trazodone on April 27, 2012); *id.* at ¶ 161, PageID.18 (Dr. Flentje prescribed plaintiff Celexa on July 27, 2012); *id.* at ¶ 170, PageID.19 (Dr. Natole approvided Celexa). Plaintiff also alleged that Ms. Nelson, a social worker, was responsible for prescribing the drugs. Ms. Nelson fairly summarized plaintiff's claims against her as follows:

> Defendant Jeanne Nelson was the Plaintiff's mental health supervisor and counselor during his incarceration at the Allegan County Jail from January 12, 2012 until September 13, 2012 and "was responsible for the Plaintiff's mental health and related psychiatric medicines." Ms. Nelson "ignored obvious conditions by approving the use of the drug Trazodone for the Plaintiff, despite knowing about his obvious and serious medical needs and the effect the drug would have on his already fragile cardiovascular system."
>
> Defendant Nelson "failed to investigate enough to make an informed medical judgment as it relates to the Plaintiff's serious medical needs and the use of the drug Trazodone." It is claimed that Ms. Nelson "knew the Plaintiff had high blood pressure, Long QT Syndrome, and a family history of heart disease" and noted in Plaintiff's January 24, 2012 Mental Health Assessment that Plaintiff's "blood pressure is over the top and he is afraid of having a heart attack." Nevertheless, it is asserted that Defendant Nelson "still approved Trazodone for him. This action caused the Plaintiff to experience prolonged severe pain and was the primary cause of his July 6, 2012 cardiac arrest which resulted in the permanent physical, neurological and cardiovascular damage and disabilities." On this basis it is alleged that Defendant Nelson "was clearly deliberately indifferent to the Plaintiff's serious medical needs by causing the unnecessary and wanton infliction of pain that amounts to cruel and unusual punishment forbidden by the Eighth Amendment of the United States Constitution and a direct violation of his Fourteenth Amendment rights protected by the Constitution."

*See* Defendant Nelson's Brief (docket no. 64, PageID.711); Compl. at ¶¶ 213-216 at PageID.33-37).

Plaintiff alleged nine counts against Ms. Nelson: Count 19 (deliberate indifference by approving the use of Trazodone on March 28, 2012); Count 20 (deliberate indifference by suggesting that the psychiatrist increase the Trazodone prescription on April 2, 2012); Count 21

(deliberate indifference by approving the use of the drug Celexa on July 27, 2012); Count 22 (negligence for her acts of March 28, 2012); Count 23 (medical malpractice for her acts of March 28, 2012); Count 24 (negligence for her acts of April 2, 2012); Count 25 (medical malpractice for her acts of April 2, 2012); Count 26 (negligence for her acts of July 27, 2012); and, Count 27 (medical malpractice for her acts of July 27, 2012). Compl. at PageID.33-37. Plaintiff seeks compensatory and punitive damages against Ms. Nelson in the amount of $15,000,000.00. *Id.* at PageId.59.

## II. Defendant Nelson's motion for summary judgment

### A. Legal standard

Ms. Nelson has moved for summary judgment pursuant to Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's claim that Ms. Nelson was deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

During the relevant time period, plaintiff was in the custody of Allegan County as both a pre-trial detainee and a convicted felon.[1] It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.

---

[1] Plaintiff alleged that he was "arrested, booked and lodged in Allegan County Jail" on January 12, 2012. Compl. at ¶ 15, PageID.9. He was convicted and sentenced sometime prior to September 13, 2012, the date on which plaintiff was transferred to the MDOC. *Id.* at ¶ 192, PageID.20.

4

*Estelle v. Gamble*, 429 U.S. 97 (1976).  "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).  Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id.* See *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not

5

constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's deliberate indifference claims against Ms. Nelson are based upon three events: approving the use of Trazodone on March 28, 2012 (Count 19); suggesting that the psychiatrist increase plaintiff's Trazodone prescription on April 2, 2012 (Count 20); and, approving the use of the drug Celexa on July 27, 2012 (Count 21). Ms. Nelson is entitled to summary judgment on all three counts.

Nelson is an LMSW ("licensed master's social worker") and has no experience in the field of medicine. *See* Nelson Aff. (docket no. 64-3, PageID.786-790). As an LMSW, Nelson does not practice medicine and cannot prescribe drugs. *Id.* at PageID.790. *See* M.C.L. § 333.18501(5) ("The practice of social work at the master's level does not include the practice of medicine or the practice of osteopathic medicine and surgery, including, but not limited to, the prescribing of drugs or administration of electroconvulsive therapy."). Plaintiff cannot establish the subjective component of a deliberate indifference claim against Nelson, because she was a social worker with no authority to prescribe either the Trazodone or the Celexa. *See Walker v. Eyke*, 417 Fed. Appx. 461, 464 (6th Cir.2011) (concluding that the plaintiff failed to offer evidence that the defendant psychologist had a sufficiently culpable mind to deprive him of certain drugs because the psychologist lacked authority to prescribe the drugs requested); *Braddock v. Crompton*, No. 1:10-cv-731, 2015 WL 6040307 at *3 (W.D. Mich. Oct. 15, 2015) (nurse lacked subjective component of deliberate indifference claim where she had no authority to reinstate requested drug); *Villa v. Rowe*, 2009 WL 4823019 at *6 (N.D.Cal. Dec.10, 2009) (nurses were not deliberately

indifferent where "they did not have the power to prescribe new medication for plaintiff or to go against the doctors' orders prescribing such medication"). Accordingly, Ms. Nelson's motion for summary judgment should be granted as to the deliberate indifference claims raised in Counts 19, 20 and 21.

### III. Plaintiff's state law claims

The remainder of plaintiff's claims against Ms. Nelson involve violations of state law: negligence on March 28, 2012 (Count 22); (medical malpractice on March 28, 2012) (Count 23); negligence on April 2, 2012 (Count 24); medical malpractice on April 2, 2012 (Count 25); negligence on July 27, 2012 (Count 26); and, medical malpractice on July 27, 2012 (Count 27). Plaintiff's state law claims should be dismissed. The Court exercised its supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, presumably because the claims were intimately related to the alleged § 1983 violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claims against Ms. Nelson requires the Court to re-examine the issue of supplemental jurisdiction for state law claims against her. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson*

*Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). For the reasons discussed, the Court has rejected plaintiff's federal claims against Ms. Nelson. There is no reason to retain supplemental jurisdiction over plaintiff's six state law claims alleged against this defendant. Accordingly, the Court should dismiss the state law claims asserted against Ms. Nelson pursuant to 28 U.S.C. § 1367(c)(3).[2]

### IV.     Recommendation

For these reasons, I respectfully recommend that defendant Nelson's motion for summary judgment (docket no. 64) be **GRANTED** as to Counts 19, 20 and 21.

I further recommend that plaintiff's state law claims against defendant Nelson set forth in Counts 22, 23, 24, 25, 26 and 27 be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that defendant Nelson be **DISMISSED** from this action.


Dated:  February 16, 2016			/s/ Ray Kent
						RAY KENT
						United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] In reaching this resolution, the Court notes that while Ms. Nelson's motion also seeks summary judgment on plaintiff's state law claims, she did not brief the issues of medical malpractice or negligence. Rather, her brief is directed at the deliberate indifference claim. *See* Nelson Brief (docket no. 64, PageID.715-721). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).