UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN KING MEYER,

          Plaintiff,

v.

JOSEPH NATOLE, *et al.*,

          Defendants.

_____/

Case No. 1:14-cv-536

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. *Pro se* plaintiff filed a 65-count complaint directed at six defendants. Although plaintiff is in the custody of the MDOC, his claims arise from incidents which occurred while being held in the Allegan County Jail. This matter is now before the Court on a motion for summary judgment filed by defendants Deborah Marcules and Jeff LaBrie (docket no. 104).

### I.      Plaintiff's complaint

On January 10, 2012, plaintiff was arrested and placed in the Allegan County Jail, charged with the felony of first degree criminal sexual conduct. Compl. at ¶ 15 (docket no. 1, PageID.9); Booking Card (docket no. 1-1, PageID.61). He suffered a cardiac arrest at the Jail on July 6, 2012.[1] Compl. at ¶¶ 105-106, PageID.15. Plaintiff's complaint alleged that six defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs:

---

[1] Plaintiff uses the term "cardiac arrest" to describe his July 6, 2012 medical emergency. For purposes of this report, the Court will use the terms "cardiac arrest" or "medical emergency" to describe the July 6, 2012 incident.

Dr. Flentje; Dr. Natole; social worker Nelson; R.N. Lance; Allegan County Jail administrator Marcules; and Allegan County Deputy LaBrie.  The present motion for summary judgment is brought by the two Jail employees, Lt. Marcules and Deputy LaBrie.[2]

Plaintiff's allegation against Lt. Marcules is that as of July 6, 2012, Marcules was aware of his "classic heart attack symptoms," that he had requested emergency medical treatment, but that Marcules did not consider his symptoms to be a medical emergency. *Id.* at PageID.14. Plaintiff's allegations against Deputy LaBrie involve the medical emergency which occurred on July 6, 2012.  *Id.* at PageID.15, 57.  Plaintiff alleged that at 2029 hours (8:29 p.m.), he climbed down from his bunk to get medical attention, his heart stopped, and his lifeless body fell to the floor next to his bunk.  *Id.* at PageID.15.[3]  Other inmates summoned help when they could not wake up plaintiff.  *Id.*  Deputy LaBrie and another deputy responded, saw plaintiff's body on the floor, and called for the jail nurse.  *Id.*  The nurse requested "EMS [Life EMS Ambulance service], the AED and a CPR mask."  *Id.*  The nurse and staff started CPR and applied the AED.  *Id.*  At 8:34 p.m. Deputy LaBrie told his staff to contact EMS and advise them that there was a "Priority One Medical."  *Id.*  Plaintiff was transported to the Allegan General Hospital by EMS.  *Id.*

Based on these allegations, plaintiff set forth two counts against Lt. Marcules and three counts against Deputy Labrie.  In Count 61 (deliberate indifference), plaintiff alleged that from January 12, 2012 until September 13, 2012, Lt. Marcules ignored plaintiff's obvious medical problems, failed to investigate those problems when she knew that plaintiff had serious medical

---

[2] Deputy LaBrie is also referred to as a sergeant at the Jail.

[3] The Court notes that the surveillance video contradicts plaintiff's allegations of his actions prior to the medical emergency.  *See* discussion, *infra*.

needs, and delayed treatment by not sending plaintiff to a hospital.  Compl. at PageID.55.  In Count 62 (negligence) plaintiff alleged that Lt. Marcules knew that plaintiff was suffering from "classic heart attack symptoms" and did not offer plaintiff any medical attention resulting in his cardiac arrest.  *Id.* at PageID.56.

In Count 65 (deliberate indifference), plaintiff alleged that from January 12, 2012 through September 13, 2012, Deputy LaBrie, was the jail supervisor, ignored obvious conditions related to plaintiff's serious medical needs and did not offer any medical attention, failed to investigate enough about plaintiff's "classic heart attack symptoms" and did not offer medical attention, and delayed plaintiff medical attention for his serious medical needs.  *Id.* at PageID.57.  In Count 63 (negligence), plaintiff alleged that Deputy Labrie knew that he was experiencing "classic heart attack symptoms" on July 6, 2012, and did not offer plaintiff any medical attention prior to his cardiac arrest.  *Id.* at PageID.56.  In County 64 (negligence), plaintiff alleged that on July 6, 2012, defendant LaBrie knew that the plaintiff was not breathing and had no pulse and instructed his subordinates to contact emergency medical services and advise that there was a "priority one medical" at the Jail rather than a "class one medical" at the Jail.  *Id.*  Plaintiff seeks compensatory and punitive damages against Lt. Marcules in the amount of $6,000.000.00 and against Deputy LaBrie in the amount of $5,000,000.00.  *Id.* at PageID.59.

**II.     Defendants' motion for summary judgment**

**A.     Legal standard**

Defendants Marcules and LaBrie have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

3

Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

**B.**   **Plaintiff's claim that defendants Marcules and Labrie were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

During the relevant time period, plaintiff was in the custody of Allegan County as both a pre-trial detainee and a convicted felon.[4]  It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976).   "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).   Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id. See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of

---

[4] Plaintiff alleged that he was "arrested, booked and lodged in Allegan County Jail" on January 12, 2012.  Compl. at ¶ 15, PageID.9.  He was convicted and sentenced sometime prior to September 13, 2012, the date on which plaintiff was transferred to the MDOC.  *Id.* at ¶ 192, PageID.20.

5

the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff appears to raise two types of deliberate indifference claims against Lt. Marcules and Deputy LaBrie. First, he claims that they acted with deliberate indifference in failing to treat his medical condition from January 2012 through September 2012. Second, he claims that

6

they acted with deliberate indifference in responding to his medical emergency on July 6, 2012. Deliberate indifference to serious medical needs can be manifested by guards "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).   In determining whether a guard is deliberately indifferent to a prisoner or pre-trial detainee's serious medical needs, the Court views the guard's actions as a layperson, not as a medical professional.   "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented." *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005) (internal quotation marks, citations and brackets omitted).   "As *Farmer* makes clear, the officers must not only be aware of the facts from which they could draw the inference that [a pre-trial detainee] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.

With respect to the first claim, plaintiff has not demonstrated that either Lt. Marcules or Deputy LaBrie failed to treat his medical condition from January 2012 through September 2012. Neither Lt. Marcules nor Deputy LaBrie were medical professionals responsible for treating plaintiff's medical condition.   In his complaint, plaintiff alleged that while in custody at the jail, he was under the care of two physicians, Dr. Flentje and Dr. Natole, who prescribed him various medications and kept progress notes of his condition. *See* Compl. at PageID.10-20; Progress Notes (docket no. 1-1, PageID.70-77, 90-91, 93.   Plaintiff's allegations are consistent with Lt. Marcules' affidavit, which stated that per county policy, corrections staff are not directly involved in the management of inmates' medical care or treatment and that Correctional Health Care (CHC)

"provided all medical care and treatment to inmates housed at Allegan County Jail pursuant to contract." Marcules Aff. (docket no. 105-3, PageID.1411).

In his response, plaintiff contends that guards at the Jail provided medical treatment by distributing medication to inmates. Meyer Aff. (docket no. 114-1, PageID.1559, 1562-1563). The fact that guards delivered medication to inmates from time to time does not establish that either Lt. Marcules or Deputy LaBrie were responsible for treating plaintiff's heart condition. *See Braddock v. Crompton*, No. 1:10-cv-731, 2015 WL 6040307 at *3 (W.D. Mich. Oct. 15, 2015) (nurse lacked subjective component of deliberate indifference claim where she had no authority to reinstate requested drug); *Villa v. Rowe*, 2009 WL 4823019 at *6 (N.D.Cal. Dec.10, 2009) (nurses were not deliberately indifferent where "they did not have the power to prescribe new medication for plaintiff or to go against the doctors' orders prescribing such medication").

Plaintiff also points out an instance in which guards did not give him medical attention when he complained about "classic symptoms of a heart attack" on July 4, 2012. Meyer Aff. at PageID.1559. However, plaintiff admits that when he spoke to Deputy LaBrie about these symptoms sometime after that date, LaBrie spoke with Dr. Natole, and advised plaintiff that Dr. Natole knew about the symptoms and did not consider them to be an emergency. *Id.* The medical progress notes reflect that plaintiff's chart was reviewed by a doctor the next day and new orders issued. *See* Progress Notes (docket no. 105-6, PageID.1420). Under these facts, Deputy LaBrie addressed plaintiff's medical condition by reporting plaintiff's symptoms to a physician. In summary, plaintiff has not demonstrated that either Lt. Marcules or Deputy LaBrie were deliberately indifferent to treating his heart condition during the eight months he spent in the Allegan County Jail.

Finally, plaintiff has failed to demonstrate that Lt. Marcules and Deputy LaBrie were deliberately indifferent to his medical emergency on July 6, 2012.  In resolving this issue, the Court must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented on July 6, 2012 and, if so, determine if Marcules and LaBrie intentionally denied plaintiff access to medical care.  *See Estelle*, 429 U.S. at 104-05*; Estate of Harbin*, 147 Fed. Appx. at 571.   With respect to the first determination, a layperson would "easily recognize" that plaintiff needed a doctor's attention on July 6, 2012.  Deputy LaBrie acknowledged that plaintiff required "emergency medical care" at that time.  *See* LaBrie Aff. at PageID.1414.

However, with respect to the second determination, plaintiff has not established that these two defendants intentionally denied him access to medical care during the medical emergency. Lt. Marcules could not deny plaintiff access to medical care because she was not at the Jail during the emergency.  Marcules Aff. at PageID.1411. While Deputy LaBrie was present at the Jail, plaintiff has failed to demonstrate that LaBrie denied him medical care.  As an initial matter, plaintiff's deliberate indifference claim against Deputy LaBrie is inconsistent with the allegations in his complaint, in which plaintiff admits that Deputy LaBrie provided him with medical care by describing how LaBrie "called the Allegan County Jail nurse" when he saw plaintiff on the floor and "told his staff to call EMS".  Compl. at PageID.15.

In addition, defendants have presented evidence which demonstrates that Deputy LaBrie provided plaintiff with immediate medical care.  The incident report from the Jail stated that the control room radioed for deputies to respond to plaintiff's dorm at 2029 hours, the time that plaintiff alleged he fell.  Incident Report (docket no. 1-2, pageID.54-55).  Contrary to plaintiff's claim that he fell while climbing down from his bunk trying to get medical attention, the surveillance

9

video shows plaintiff walking around the cell area and observing other inmates set up a board game. Plaintiff was standing next to a bunk at the time he suddenly collapsed. *See* Surveillance Video (docket no. 107) (commencing at 1928:00 hours).

According to the report, Deputy LaBrie responded within 20 seconds. Incident Report at PageID.55. While Deputy LaBrie spoke with a witness to determine what occurred, another deputy kneeled down and examined plaintiff, and a third deputy called a nurse. *Id.* The nurse arrived at 2031 hours. *Id.* At 2033 hours the nurse advised the deputies to call an ambulance and began CPR at 2034 hours. *Id.* Life EMS Ambulance (EMS) records show that it received the call from the Allegan County Jail at 2034:59 hours. *See* Prehospital Care Report Summary (docket no. 105-9, PageID.1432).[5] At 2035 hours the AED was attached and Deputy LaBrie assisted the nurse with CPR. Incident Report at PageID.55. Deputy LaBrie administered shocks as directed by the AED at 2037 and 2039. *Id.* EMS personnel reported "patient contact" at 2038:00 hours and attended to plaintiff until they left the scene at 2058:28 hours. Prehospital Care Report Summary at PageID.1432. The events set forth in the incident report are consistent with the events depicted in the surveillance video. Based on this record, plaintiff received immediate attention from Deputy LaBrie, other deputies and a jail nurse. Given this timeline, there is no evidence that Deputy LaBrie denied plaintiff access to medical attention after discovering the medical emergency.

Accordingly, Lt. Marcules should be granted summary judgment as to the deliberate indifference claim alleged in Count 61 and Deputy LaBrie should be granted summary judgment as to the deliberate indifference claim alleged in Count 65.

---

[5] The Court notes that the times reported by EMS differ slightly from the times imprinted on the surveillance video.

### III.     Plaintiff's state law claims

The remainder of plaintiff's claims against Lt. Marcules and Deputy LaBrie in Counts 62, 63 and 64 involve allegations of negligence under state law.   The Court exercised its supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, presumably because the claims were intimately related to the alleged § 1983 violations.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").   The dismissal of plaintiff's federal claims against Lt. Marcules and Deputy LaBrie requires the Court to re-examine the issue of supplemental jurisdiction for state law claims against them.   Under 28 U.S.C. § 1367(c)(3), a   district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."   Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367.  *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties").   For the reasons discussed, the Court has rejected plaintiff's federal claims against Lt. Marcules and Deputy LaBrie. There is no reason to retain supplemental jurisdiction over plaintiff's three state law claims alleged against these defendants. Accordingly, the

11

Court should dismiss the state law claims asserted against Lt. Marcules and Deputy LaBrie pursuant to 28 U.S.C. § 1367(c)(3).

### IV.    Recommendation

For these reasons, I respectfully recommend that Lt. Marcules and Deputy LaBrie's motion for summary judgment (docket no. 104) be **GRANTED** as to the claims of deliberate indifference alleged in Counts 61 and 65.

I further recommend that plaintiff's state law claims against Lt. Marcules and Deputy LaBrie set forth in Counts 62, 63 and 64 be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that Lt. Marcules and Deputy LaBrie be **DISMISSED** from this action.


Dated:  February 26, 2016                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).