UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN KING MEYER,

        Plaintiff,

v.

JOSEPH NATOLE, *et al.*,

        Defendants.

_____/

Case No. 1:14-cv-536

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. *Pro se* plaintiff filed a 65-count complaint directed at six defendants. *See* Compl. (docket no. 1). He later amended the complaint to include 12 additional counts against defendant Gregory Flentje, M.D., Ph. D. *See* Amendments (docket no. 301-1). For purposes of this report, the "amended complaint" consists of the original complaint (docket no. 1) and the amendments (docket no. 301-1). Although plaintiff is in the custody of the MDOC, his claims arise from incidents which occurred while being held in the Allegan County Jail. This matter is now before the Court on defendant Dr. Flentje's motion to dismiss the amended complaint (docket no. 302).

    **I.**    **Background**

Plaintiff's claims arise from incidents which occurred in 2012. On January 10, 2012, plaintiff was arrested and placed in the Allegan County Jail, charged with the felony of first degree criminal sexual conduct. Compl. (docket no. 1, PageID.9); Booking Card (docket no. 1-1, PageID.61). While being held at the jail, plaintiff suffered a cardiac arrest on July 6, 2012. Compl.

at PageID.15. Plaintiff's complaint alleged that six defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs: Dr. Flentje; Dr. Natole; Social Worker Nelson; LPN Lance[1]; Allegan County Jail Administrator Marcules; and Allegan County Deputy LaBrie. Defendants Nelson, Marcules and LaBrie have been dismissed from this action, and defendants Dr. Natole and LPN Lance have file a motion for summary judgment, which is pending before the Court.

## II.     Plaintiff's allegations against Dr. Flentje

Plaintiff's amended complaint contains 21 counts against Dr. Flentje.

### A.     Deliberate indifference (Counts 28, 29 and 30)

In Counts 28, 29 and 30, plaintiff alleged that Dr. Flentje was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff included a general allegation in each of these counts setting forth his interaction with Dr. Flentje which stated as follows:

> Defendant Gregory Flentje was the plaintiff's psychiatrist during his incarceration at the Allegan County Jail from January12, 2012 until September 13 2012 and was acting under the color of state law at all times relevant to this complaint. Defendant Flentje was aware of the plaintiff's serious medical needs such as high blood pressure, Long QT syndrome and a family history of heart disease, and started treating him in January of 2012. Defendant Flentje noted the plaintiff's serious medical needs on page 1 and 2 of his March 23, 2012 "Outpatient Psychiatric Evaluation." It was the defendants responsibility to prescribe psychiatric medicines and treatments.

*See*, e.g., Count 28 (docket no. 1, PageID.38). The general allegations in Counts 29 and 30 are nearly identical, with Count 30 including an additional reference to the doctor's notation of

---

[1] Plaintiff erroneously alleged that Nurse Lance is a registered nurse (RN). Nurse Lance is in fact a licensed practical nurse (LPN). *See* Janet Lance Aff. Certification (docket no. 200-1, PageID.2748).

plaintiff's serious medical needs "on page 1 of his July 27, 2012 'Medication Review,' where he talks about Trazodone causing his cardiac arrest and 'death.'" *See* Count 29 (docket no. 1, PageID.39); Count 30 (docket no. 1, PageID.40).

In Count 28, plaintiff alleged that Dr. Flentje was deliberately indifferent on March 23, 2012, when he:

> A: Ignored obvious conditions by prescribing the drug Trazodone for the plaintiff, which is toxic and poisonous to him because of his serious medical needs.
>
> B: Failed to investigate enough to make an informed judgement, when he prescribed Trazodone to the plaintiff, which is toxic and poisonous to him because of his serious medical needs.
>
> C: Failed to provide treatment for diagnosed conditions by prescribing the drug Trazodone.
>
> D: Made a medical judgement so bad its not medical, when he prescribed the drug Trazodone to a person with the plaintiff's cardiovascular issues and serious medical needs.

*Id*. Plaintiff further stated that:

> Defendant Flentje knew of the plaintiff's serious medical needs and chose to disregard and ignore his needs by prescribing the drug Trazodone. This action caused the plaintiff to experience prolonged severe pain and was the primary cause of his July 6, 2012 cardiac arrest, which resulted in the permanent physical, neurological aod cardiovascular damage and disabilities.

*Id*.

In Count 29, plaintiff alleged that Dr. Flentje was deliberately indifferent to his serious medical needs when he prescribed the Trazodone on April 17, 2012 because the doctor:

> A: Ignored obvious conditions by increasing the plaintiff's Trazodone prescription from 50mg to 100mg per day.
>
> B: Failed to investigate enough to make an informed judgement, when he doubled the daily amount of Trazodone for the plaintiff .

3

> C: Failed to provide treatment for diagnosed conditions by increasing the plaintiffs Trazodone to 100mg/day.
>
> D: Made a medical judgement so bad it's not medical when he did not check for issues between the drug Trazodone and the serious medical needs of the plaintiff.

Count 29 (docket no. 1, PageID.39).  Plaintiff further alleged that this was the primary cause of his July 6, 2012 cardiac arrest.  *Id.*

In Count 30, plaintiff alleged that Dr. Flentje was deliberately indifferent for prescribing him Celexa on July 27, 2012 (a few weeks after his cardiac arrest) because the doctor:

> A: Ignored obvious conditions by prescribing the drug Celexa, a known SSRI that is toxic, poisonous and deadly to the plaintiff with his obvious serious medical needs.
>
> B: Failed to provide treatment for diagnosed conditions such as Long QT Syndrome, when he approved the use of the drug Celexa.
>
> C: Failed to investigate enough to make an informed judgement, by prescribing the drug Celexa, and knowing that its toxic, poisonous and deadly to the plaintiff because of his serious medical needs.
>
> D: Made a medical judgement so bad it's not medical, when he prescribed the drug Celexa, knowing that it would only injure or cause death to the plaintiff because of his serious medical needs, such as Long QT Syndrome.

Count 30 (docket no. 1, PageID.40).  Plaintiff further alleged that:

> Defendant Flentje knew of the plaintiffs serious medical needs and chose to disreguard and ignore his needs by prescribing the drug Celexa.  Defendant Flentje was notified, in writing, by the plaintiff's cardiologist, that he suffers from "Long QT Syndrome" and to avoid SSRI medicines.  Defendant Flentje did not check with the plaintiff's cardiologist for approval for the drug Celexa.

*Id.*

>    B.   **State law claims of negligence and medical malpractice (Counts 31, 32, 33, 34, 35 and 36)**

Plaintiff alleged six counts against Dr. Natole under state law for negligence and medical malpractice based on the same events: Count 31 (negligent for prescribing Trazodone on March 23, 2012); Count 32 (medical malpractice for same reason); Count 33 (negligent for increasing the daily dose of Trazodone from 50mg to 100 mg on April 17, 2012); Count 34 (medical malpractice for same reason); Count 35 (negligent for prescribing Celexa on July 27, 2012); and Count 36 (medical malpractice for same reason). Compl. at PageID.41-42.

>    C.   **Deliberate indifference (Counts 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76 and 77)**

For the most part, these counts are based upon the same acts which form the basis for the deliberate indifference claims alleged in Counts 28, 29 and 30. For example, plaintiff added additional allegations regarding the extent of Dr. Flentje's knowledge of plaintiff's medical history prior to his cardiac arrest, stating in pertinent part: that "Defendant Flentje was aware of Plaintiff's diagnosed serious medical needs such as cardiac arrest, anxiety, high blood pressure, Long QT Syndrome, and a family history of heart disease (A.S.C.V.D.) [sic], and started treating him on January 27, 2012"; that Trazodone was "toxic and poisonous to [plaintiff] because of his family history of A.S.C.V.D., and [Dr. Flentje] knew it"; and that Dr. Flentje prescribed plaintiff Trazodone knowing that it could cause "'Torsades de Pointes,' or instant death by cardiac arrest." *See, e.g.,* Count 66 (docket no. 301-1, PageID.3503).[2] For claims which occurred after the cardiac arrest,

---

[2] "Torsades de pointes" is defined as "an atypical rapid ventricular tachycardia with periodic waxing and waning of amplitude of the QRS complexes on the eletrocardiogram as well as rotation of the complexes abut the isoelectric lines; it may be self-limited or may progress to ventricular fibrillation." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 1723.

plaintiff added allegations that Dr. Flentje was aware of "the fact that he [plaintiff] was under the care of a Cardiologist." *See, e.g.*, Count 73 (docket no. 301-1, PageID.3510). The claims alleged in these new counts are summarized below.

Count 66 restates the claim alleged in Count 28, i.e., that Dr. Flentje was deliberately indifferent to plaintiff's serious medical needs when he prescribed Trazodone on March 23, 2012. Plaintiff adds allegations regarding: the nature of his serious medical need, "S.S.R.I. allergy because of family A.S.C.C.D. history," the objective component of a deliberate indifference claim, "Flentje knew that Trazodone was not appropriate for Meyer because of his cardiovascular problems and family history of heart disease;" and the subjective component of a deliberate indifference claim, "On March 23, 2012, Flentje still prescribed Meyer the Trazodone, knowing that this could cause "Torsades de Pointes," or instant death by cardiac arrest. (Exhibit I, J, K, L)". Count 66 (docket no. 301-1, PageID.3503).

Count 67 also relates to the March 23, 2012 prescription, alleging that Dr. Flentje was deliberately indifferent because the doctor "Did not review the risks and warnings of using the drug Trazodone with the Plaintiff before prescribing him the dangerous treatment, which resulted in permanent injury/death." Count 67 (docket no. 301-1, PageID.3504). Plaintiff alleged that this informed consent claim rose to the level of a Constitutional violation "because it caused permanent injuries and temporary death." *Id.*

Count 68 alleges that Dr. Flentje was deliberately indifferent for failing to monitor plaintiff between March 23, 2012 and April 27, 2012, when plaintiff was on his original dosage of Trazodone. Count 68 (docket no. 301-1, PageID.3505).

Count 69 alleges that Dr. Flentje was deliberately indifferent for denying him medical care on April 2, 2012 by not examining or evaluating plaintiff after he learned that there was a problem with the Trazodone. Count 69 (docket no. 301-1, PageID.3506). Rather, the doctor "just doubled the daily dose." *Id.* This claim arose in the context of plaintiff's allegations: that on April 2, 2012, former defendant Nelson sent a fax to Dr. Flentje asking if he wanted to increase plaintiff's Trazodone "because he [plaintiff] is a very large man;" that Dr. Flentje increased the dosage on April 17, 2012; that Dr. Natole "authorized and approved" the increased dosage on April 27, 2012; and that plaintiff first received the increased dosage on April 27, 2012. Compl. at PageID.11. This count is essentially a restatement and elaboration of Count 29.

Count 70 alleges that Dr. Flentje was deliberately indifferent for denying him medical care on April 27, 2012, because the doctor "Violated Allegan County Jail Policy by altering/ adjusting /increasing a psychiatric medication (Trazodone) without waiting the required six to eight weeks. Count 70 (docket no. 301-1, PageID.3507). Plaintiff alleged that on that date, Dr. Flentje doubled plaintiff's daily dosage of Trazodone from 50mg to 100mg. *Id.* As discussed, *supra*, plaintiff alleged that Dr. Flentje increased the dosage on April 17, 2012 and that plaintiff first received the increased dosage on April 27, 2012.

Count 71 alleges that Dr. Flentje was deliberately indifferent for not monitoring plaintiff between April 27, 2012 and July 6, 2012. Count 71 (docket no. 301-1, PageID.3508).

Count 72 alleges that Dr. Flentje was deliberately indifferent to his serious medical needs between April 27, 2012 and July 6, 2012 because he ignored plaintiff's "Classic Heart Attack Symptoms." Count 72 (docket no. 301-1, PageID.3509). Plaintiff contends that Dr. Flentje met the

subjective component of this claim because Dr. Flentje "worked at the jail and had access to his medical records." *Id.*

Count 73 alleges that Dr. Flentje was deliberately indifferent to plaintiff's serious medical needs because he prescribed plaintiff Celexa, "a known SSRI, which plaintiff should not have received because of his family history of A.S.C.V.D." Count 73 (docket no. 301-1, PageID.3510). Count 73 is essentially a restatement of Count 30.

Count 74 alleges that Dr. Flentje was deliberately indifferent on July 27, 2012 because he failed to obtain plaintiff's informed consent for the Celexa. Count 74 (docket no. 301-1, PageID.3511).

Count 75 alleges that Dr. Flentje was deliberately indifferent on July 27, 2012 "by prescribing Celexa, a known SSRI, directly against the cardiologist's written instructions." Count 75 (docket no. 301-1, PageID.3512).

Count 76 alleges that Dr. Flentje was deliberately indifferent on July 27, 2012 by, among other acts, "prescribing Celexa, a known SSRI, without Meyer's cardiologist's approval." Count 76 (docket no. 301-1, PageID.3513).

Count 77 alleges that Dr. Flentje was deliberately indifferent for failing to monitor plaintiff's condition between July 27, 2012 and August 23, 2012. Count 77 (docket no. 301-1, PageID.3514).

Finally, plaintiff seeks compensatory and punitive damages against Dr. Flentje in the amount of $15,000,000.00. Compl. at PageID.59.

### III. Defendant's motion to dismiss

### A. Legal standard

Dr. Flentje brings this motion pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual

9

of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

During the relevant time period, plaintiff was in the custody of Allegan County as both a pre-trial detainee and a convicted felon.[3] It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id. See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional

---

[3] Plaintiff alleged that he was "arrested, booked and lodged in Allegan County Jail" on January 12, 2012. Compl. at PageID.9. He was convicted and sentenced sometime prior to September 13, 2012, the date on which plaintiff was transferred to the MDOC. *Id.* at PageID.20.

violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Dr. Flentje contends that none of the allegations rise to the level of deliberate indifference, citing *Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001).[4] In *Comstock*, the Court discussed conduct which rises to the level of deliberate indifference, stating in pertinent part:

> The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more

---

[4] As discussed in a previous order, Dr. Flentje's brief (docket no. 303) adopts the arguments set forth in his brief (docket no. 263) and reply (docket no. 288) filed in support of the motion to dismiss the original complaint. Plaintiff's response to the present motion to dismiss (docket no. 307) adopts the arguments set forth in his previously filed "Response to Defendant Flentje's Motion to Dismiss, in Lieu of Answer to Plaintiff's Amended Complaint" (dated May 23, 2016) (docket no. 293).

than negligence or the misdiagnosis of an ailment. *See Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970 (noting that deliberate indifference "describes a state of mind more blameworthy than negligence"). When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970; *see also Horn*, 22 F.3d at 660 ("Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain."). Instead, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970.

Although the plaintiff bears the onerous burden of proving the official's subjective knowledge, this element is subject to proof by "the usual ways." *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970. Thus, the Supreme Court noted that it was permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge. *Id.* at 842, 114 S.Ct. 1970. Moreover, the Court warned, a prison official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n. 8, 114 S.Ct. 1970.

*Comstock*, 273 F.3d at 703.

### B. Discussion

#### 1. Counts 28, 29 and 30

Counts 28, 29 and 30 set forth in the original complaint relate to Dr. Flentje's acts of prescribing Trazodone, increasing the dosage of Trazodone, and prescribing Celexa. As discussed, *supra*, these three counts have been subsumed in the new Counts 66, 69 and 73. Accordingly, Counts 28, 29 and 30 should be dismissed as superseded by the amended counts.

##### 2. Counts 67, 70 and 74

In Counts 67 and 74, plaintiff alleged that Dr. Flentje was deliberately indifferent because plaintiff did not give informed consent to the doctor's act of prescribing Trazodone and Celexa, i.e., the doctor did not review the risks and warnings of the medications with him. While Dr. Flentje seeks to dismiss these counts, he did not specifically address the claim of informed consent. Nevertheless, the Court concludes that lack of informed consent does not support a constitutional claim for deliberate indifference. "The doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v. Cohn*, 269 Mich. App. 303, 308, 713 N.W.2d 16 (2005). The doctrine arose from Michigan tort law:

> Michigan recognizes and adheres to the common-law right to be free from nonconsensual physical invasions and the corollary doctrine of informed consent. Accordingly, if a physician treats or operates on a patient without consent, the physician has committed a battery and may be required to respond in damages.

*In re Rosebush*, 195 Mich. App. 675, 680, 491 N.W.2d 633 (1992). Here, plaintiff has not alleged that Dr. Flentje engaged in a medical procedure which involved a lack of informed consent, i.e., a non-consensual touching. Even if plaintiff had made such an allegation, under Michigan law, a claim that a doctor performed a procedure without the patient's informed consent is considered to an act involving medical malpractice rather than a battery. *See, e.g., Rodgers v. Syverson*, No. 269283, 2006 WL 2687530 at *3 (Mich. App. Sept. 19, 2006) (where plaintiff alleged that she did not consent to surgeon placing incision in her labinal/vaginal area, her claim of lack of informed consent was one medical malpractice, not a battery for non-consensual touching). Furthermore, contrary to plaintiff's contention, a malpractice claim such as lack of informed consent cannot be transformed into a federal constitutional claim. *See Estelle*, 429 U.S. at 106 ("[m]edical malpractice

does not become a constitutional violation merely because the victim is a prisoner"). Accordingly, Dr. Flentje's motion to dismiss should be granted with respect to Counts 67 and 74.

Next, in Count 70, plaintiff has alleged that Dr. Flentje failed to follow jail policy regarding prescribing a psychiatric medication (Trazodone). The failure to follow a jail policy sounds in negligence or medical malpractice, not deliberate indifference. *Id*. Accordingly, Dr. Flentje's motion should be granted as to Count 70.[5]

### 3. Counts 66, 68, 69, 71, 72, 73, 75, 76 and 77

As discussed in a previous Report and Recommendation (R&R), the gist of plaintiff's claims in this lawsuit are that (1) none of the doctors should have prescribed Trazodone because he was "allergic" to it due to his medical history; (2) none of the doctors should have increased the Trazodone for the same reason; (3) the Trazodone caused his cardiac arrest; (4) doctors ignored his "classic heart attack symptoms;" and, (5) none of the doctors should have prescribed him Celexa after his cardiac arrest because he was "allergic" to it; and (6) prescribing Celexa was directly against the treating cardiologist's orders. *See* R&R (docket no. 311).

Accepting the well-pleaded facts in the amended complaint as true, plaintiff has alleged that he received medical care. The issue before the Court is whether plaintiff can maintain an action for deliberate indifference against Dr. Flentje on the ground that the medical care provided was so deficient that it amounted to "no treatment." In addressing Eighth Amendment claims, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."

---

[5] For the reasons set forth in § III.B.4., plaintiff should not be allowed to re-plead Counts 67, 70 and 74 as claims for malpractice.

*Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*, 537 F.2d at 860 n. 5 (internal quotation marks omitted). While the courts give great deference to a prison doctor's medical judgment, it is possible to find that a doctor is deliberately indifferent for providing medical treatment which is so inadequate as to be equivalent to no treatment at all. However, such a finding is warranted only where the treatment provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hospital*, 286 F.3d 834, 843-44 (6th Cir. 2002) (internal quotation marks omitted). *Compare Comstock*, 273 F.3d at 703 ("[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").

Here, plaintiff has alleged that Dr. Flentje knew of his pre-existing cardiac condition and that prescribing Trazodone to plaintiff could cause instant death. In the Court's opinion, Dr. Flentje's alleged conduct, if true, would "shock the conscience." *See Terrance*, 286 F.3d at 844. While plaintiff faces an "onerous burden" of proving these allegations, the Court must accept these well-pleaded facts as true for purposes of this motion to dismiss.[6] Accordingly, Dr. Flentje's motion

---

[6] In reaching this determination, the Court is mindful of facts presented in a previous motion for summary judgment which indicates that neither Dr. Natole nor LPN Lance were aware of plaintiff's pre-existing conditions. *See* Report and Recommendation (docket no. 311, PageID.3557, 3563) ("In sum, there is no evidence that plaintiff ever disclosed his cardiac issues to either Dr. Natole or a member of the jail's medical staff, and some evidence that plaintiff was not even aware of this condition until after the cardiac

to dismiss should be denied as to plaintiff's claims related to the Trazodone prescription as alleged in Counts 66, 68, 69, 71 and 72.

In addition, plaintiff has alleged that Dr. Flentje prescribed Celexa knowing that the treating cardiologist specifically directed treating physicians not to prescribe the drug due to life-threatening side effects. If true, this action would also "shock the conscience." However, plaintiff's amended complaint includes conflicting allegations which contradict this claim. Attached to the complaint is a medication review performed by Dr. Flentje on July 27, 2012 involving plaintiff's diagnosis of generalized anxiety, a subjective evaluation of "I'm glad to be alive," and the following objective evaluation:

> Mr. Meyer suffered an arrhythmia with cardiac arrest, syncope, and what the nursing staff describes as a resuscitation from death. Mr. Meyer is no longer allowed to have Trazodone due to his coronary circumstances and he requested Zoloft be discontinued after his discharge from the acute facility wherein he is treated. He now has a defibrillator He is not being allowed to pursue cardiac rehab due to his charges. After some discussion I suggest treatment with Celexa, 20mg daily and pending his cardiologist's approval, we will use clonidine for sleep. I will follow-up with Mr. Meyer as appropriate. As I have made it clear he may have a dose increase of Celexa if that is necessary.

Medication Review (July 27, 2012) (docket no. 1-2, PageID.142). In his complaint, plaintiff alleged that the Celexa prescription was discontinued on August 22, 2012 when the cardiologist contacted the jail. *See* Compl. at PageID.20. Progress notes attached as an exhibit to plaintiff's complaint reflect that on August 22, 2012, the cardiologist contacted the jail with the results of medical tests

---

arrest. Based on this record, plaintiff has failed to demonstrate the subjective prong of his deliberate indifference claim, i.e., that prior to July 6, 2012 Dr. Natole knew of and disregarded an excessive risk to plaintiff's health due to prescribing Trazodone to a person with a diagnosis of Long QT Syndrome or allergy to SSRIs.").

16

and advised jail staff that plaintiff "was not to be on SSRI's" and to discontinue Celexa. *Id.*; Progress Notes (Aug. 22, 2012) at PageID.77.

The allegations and progress notes indicate that while Dr. Flentje ordered plaintiff to be treated with Celexa on July 27, 2012, jail personnel were not aware of the Celexa restriction until the cardiologist reported test results on August 22, 2012, and that the Celexa was discontinued immediately upon receipt of the cardiologist's instructions. These allegations and exhibits set forth in the amended complaint contradict plaintiff's claims that Dr. Flentje prescribed Celexa knowing that it would cause injury to plaintiff and that the prescription was contrary to the cardiologist's instructions. Accordingly, Dr. Flentje's motion should be granted as to Counts 73, 75, 76 and 77.

**4.      Counts 31, 32, 33, 34, 35 and 36**

Finally, Counts 31, 32, 33, 34, 35 and 36 allege that Dr. Flentje was either negligent or committed medical malpractice. In addressing Dr. Natole and LPN Lance's motion for summary judgment, the undersigned recommended granting summary judgment on plaintiff's claims of negligence and medical malpractice because (1) the negligence claims are actually claims for medical malpractice, and (2) plaintiff's malpractice claims fail because he did not obtain and file an affidavit of merit with his complaint. *See* R&R (docket no. 311, PageID.3564-3566). The negligence/ malpractice claims alleged against Dr. Flentje are part of the same lawsuit and suffer from the same flaw as his claims alleged against Dr. Natole and LPN Lance. Accordingly, for the reasons as set forth in the previous R&R (docket no. 311), plaintiff's claims of negligence/malpractice alleged against Dr. Flentje in Counts 31, 32, 33, 34, 35 and 36 should be dismissed.

### IV.     Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Flentje's motion to dismiss (docket no. 302) be **GRANTED** with respect to Counts 28, 29, 30, 31, 32, 33, 34, 35, 36, 67, 70, 73, 74, 75, 76 and 77, and **DENIED** with respect to Counts 66, 68, 69, 71 and 72.

Dated:  December 19, 2016              /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).